UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| D&S REMODELERS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-59 |
| | ) | Judge Aleta A. Trauger |
| WRIGHT NATIONAL FLOOD | ) | |
| INSURANCE SERVICES, LLC f/k/a | ) | |
| FIDELITY NATIONAL INSURANCE | ) | |
| SERVICES, LLC; COLONIAL | ) | |
| CLAIMS CORPORATION; THE | ) | |
| FOUNDRY AT HUNTERS POINT | ) | |
| CONDOMINIUMS; BOARD OF | ) | |
| MANAGERS OF THE FOUNDRY AT | ) | |
| HUNTERS POINT CONDOMINIUMS; | ) | |
| JENNIFER M. MCCARTHY; | ) | |
| AMANDA L. FUNG; RONALD L. | ) | |
| LOSBY; AMBER BARTH; JULIE M. | ) | |
| HELLER; ERIC MALINOWSKI; | ) | |
| TIMOTHY CHEN; ROBERT J. | ) | |
| SWIDERSKI; and NEW BEDFORD | ) | |
| MANAGEMENT, CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the court is a Motion to Dismiss (Docket No. 73) filed by the defendant Wright National Flood Insurance Company f/k/a Fidelity National Insurance Services, LLC ("Fidelity"),[1] to which the plaintiff D&S Remodelers, Inc. ("D&S") has filed a Response in Opposition (Docket No. 79), Fidelity has filed a Reply (Docket No. 85), and D&S has filed a

---

[1] The caption to this case, as per the pleadings, designates this defendant as Wright National Flood Insurance Services, LLC, but Fidelity notes in its briefing that its proper name is Wright National Flood Insurance Company. There is no apparent dispute as to Fidelity having been formerly known as Fidelity National Insurance Services, LLC. As indicated above, the court will refer to this defendant herein simply as "Fidelity."

1

Sur-Reply (Docket No. 104). For the reasons discussed herein, the Motion to Dismiss will be granted.

## BACKGROUND AND PROCEDURAL HISTORY

This action arises from allegations that the defendants – despite binding promises to the contrary – did not remunerate the plaintiff contractor D&S for remediation and repair work that D&S performed on the Foundry at Hunters Point Condominiums (the "Foundry") following damage to the Foundry during Hurricane Sandy in 2012. D&S initially filed this lawsuit on January 20, 2015 against all defendants identified in the case caption except Fidelity, Colonial Claims Corporation ("Colonial"), and New Bedford Management Corp. (Docket No. 1.) On November 24, 2015, D&S filed an Amended Complaint, adding these three defendants to the action. (Docket No. 48.) The Amended Complaint, which alleges that the costs of D&S's services and materials for work done on the Foundry totaled $505,800.08 and that the defendants never made any payment toward this amount, brings claims for breach of contract, unjust enrichment, fraudulent inducement, intentional misrepresentation, and negligent misrepresentation.

The Amended Complaint specifically states that D&S entered into a contractual relationship with the Foundry to perform a large-scale repair project over the course of several years. Under this contract, according to the Amended Complaint, the Foundry "assigned to D&S the right to recover all monies received from any insurance company related to D&S's services and materials provided to the Foundry." (*Id*. ¶ 41.) The parties then worked together to submit claims to the Foundry's insurers, and to available disaster relief funds, for reimbursement that would cover the costs of the project. The Amended Complaint explains that defendant Fidelity provided flood insurance to the Foundry through the National Flood Insurance Program (the

"NFIP") and that Colonial acted as Fidelity's adjuster for any claims related to this policy. The Amended Complaint specifically states that "D&S reasonably believed that Colonial was acting as the agent for Fidelity because Colonial represented itself as the adjuster acting on behalf of Fidelity." (*Id.* ¶ 57.) The Amended Complaint then alleges that Colonial orally agreed that Fidelity would cover the costs of materials and services rendered by D&S on behalf of the Foundry, provided that those costs were not covered by other insurance carriers or by available disaster relief funds. According to the Amended Complaint, this agreement was then repeatedly confirmed by Colonial in writing. There are no allegations in the Amended Complaint that D&S ever had any direct interactions with Fidelity, and all claims against Fidelity are based solely on the alleged representations of Colonial while acting as Fidelity's adjuster.

On January 12, 2016, Fidelity filed a Motion to Dismiss the claims against it, along with an accompanying Brief in support and an attached copy of the Standard Flood Insurance Policy ("SFIP") promulgated by the Federal Emergency Management Agency ("FEMA"). (Docket Nos. 73, 74.) Fidelity argues that any state law claims against it are preempted by federal law governing claims arising from NFIP policies and that, even if D&S's claims against Fidelity are not preempted, they remain uncognizable under the express provisions of the SFIP.

On January 29, 2016, D&S filed a Response in opposition to Fidelity's Motion to Dismiss, arguing that its claims against Fidelity do not arise under the NFIP policy issued by Fidelity to the Foundry and, therefore, are neither preempted by federal law governing this policy nor restricted by the policy's terms. (Docket No. 79.) On February 16, 2016, Fidelity filed a Reply (Docket No. 85) and, on March 9, 2016, D&S filed a Sur-Reply (Docket No. 104).

## **LEGAL STANDARD FOR MOTIONS TO DISMISS**

3

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that a plaintiff provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

## **ANALYSIS**

In 1968, Congress enacted the National Flood Insurance Act, 42 U.S.C. § 4001 *et seq*. (the "NFIA"), which established the NFIP in order to make flood insurance coverage available to private residences and businesses on reasonable terms, through federal funding. *See, e.g., Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 946 (6th Cir. 2002); *Campo v. Allstate Ins. Co.*,

562 F.3d 751, 754 (5th Cir. 2009). Under the NFIA, FEMA administers the NFIP, 42 U.S.C. § 4011, and may implement the program either by issuing its own flood insurance policies to property owners or by utilizing private insurance companies, as agents of the United States, to issue and administer these policies, *id*. §§ 4071(a), 4081. To this end, FEMA established the Write-Your-Own program ("WYO"), through which private insurers can be authorized by FEMA to issue policies under the NFIP in their own names and handle all administration of the policies – including adjustment, settlement, payment, and defense of claims – with the federal government acting as a financial guarantor. 44 C.F.R. § 62.63. The general terms of these policies are governed by FEMA regulations and, whether issued directly by FEMA or by a WYO carrier, all NFIP policies must comport with the terms of the SFIP set forth by FEMA in 44 C.F.R. Part 61, Appendix A. *Id.*

Under the NFIA, insurance claims for NFIP policies and their defense are ultimately paid for by the federal government and governed by federal regulations, with WYO carriers acting solely as administrators. *See, e.g., Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 342-43 (5th Cir 2005); *C.E.R. 1998, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 267 (3d Cir. 2004). As of an amendment passed in 2000, the terms of the SFIP provide that "all disputes arising from the handling of any claim under the [SFIP] are governed exclusively by the flood insurance regulations issued by FEMA, the [NFIA], and Federal common law." 44 C.F.R. Pt. 61, App. A(1), Art. IX. The Sixth Circuit has expressly held that, even prior to this amendment, state common law actions based on the disposition of a NFIP policy claim were clearly preempted by the NFIA, which permits only a federal cause of action. *Gibson*, 289 F.3d at 949 (6th Cir. 2002) (citing *Van Holt v. Liberty Mut. Fire & Ins. Co.*, 163 F.3d 161, 166-67 (3d Cir. 1998)). More recently, the Sixth Circuit has affirmed its position that "[t]he NFIA indisputably preempts state

5

law causes of action based on the handling and disposition of SFIP claims." *Harris v. Nationwide Mut. Fire Ins. Co.*, No. 15-6132, 2016 WL 4174381, at *3 (6th Cir. Aug. 8, 2016) (internal citations omitted). At least one other federal Court of Appeals to examine this issue has held that the 2000 amendment to the SFIP preempts state law actions arising from NFIP policy claims. *See Wright v. Allstate Ins. Co.*, 415 F.3d 385, 390 (5th Cir. 2005). With respect to the remaining federal cause of action, under the terms of the SFIP, rights to the policy – and, therefore, standing to bring a federal claim as an insured – can only be assigned through the transfer of the insured property. 44 C.F.R. Pt. 61, App.(A)(3), Art. VIII(D) ("You may assign [a NFIP policy] in writing when you transfer title of your property to someone else . . . .")

Additionally, the terms of the SFIP expressly provide that, while a WYO carrier may authorize a private third-party adjuster to assist with the investigation and handling of claims made under a NFIP policy, the adjuster shall not be authorized to approve or disapprove claims or to tell the insured whether claims will be approved. *Id*. at Art. VIII(J). While the court is not aware of any Sixth Circuit precedent on this issue, at least two Federal Courts of Appeals have held that it is unreasonable – as a matter of law – to rely on an adjuster's statements about the NFIP claims process that contradict the terms of the SFIP and, therefore, a claim based on such representations cannot be sustained. *See Richmond Printing LLC v. Dir. Fed. Emergency Mgmt. Agency*, 72 F. App'x 92, 97-98 (5th Cir. 2003) (affirming the dismissal of a claim against a WYO carrier based on the adjuster's incorrect representations about how to submit a claim under the policy, because the plaintiff had the duty to understand the terms of the publicly available SFIP, and it was unreasonable for the plaintiff to rely on the adjuster's statements that contradicted those terms); *Kerr v. FEMA*, 113 F.3d 884 (8th Cir. 1997) (dismissing a claim

6

against an adjuster because reliance on the adjuster's representations that contradicted the SFIP terms was unreasonable).

D&S does not dispute the legal framework outlined above, including that 1) actions by NFIP *insureds* against WYO carriers based on the handling of insurance claims under these policies are limited to federal breach of contract actions, and 2) D&S does not have standing as an assignee to bring a federal breach of contract action, based on the handling of a claim under the Foundry's NFIP policy with Fidelity. (Docket No. 79, p.6.) In light of the SFIP provisions, D&S appears to concede the positon asserted in its Amended Complaint that it is an assignee of the Foundry's rights with respect to the Foundry's NFIP policy with Fidelity. Rather D&S argues that this analysis does not apply to its claims because D&S is not the *insured* under the Foundry's NFIP policy with Fidelity, and its claims against Fidelity are not based on the policy. (*Id*. pp. 6-13.) According to D&S, it is not attempting to step into the shoes of the Foundry to enforce the policy but, rather, its claims against Fidelity are based on a wholly separate transaction between Colonial and D&S that bound Fidelity to pay for D&S's work on the Foundry's behalf. (*Id*.)

All the while, D&S admits that it had no direct interactions with Fidelity and communicated only with Colonial and – by the very allegations in the Amended Complaint – Colonial, in its dealings with D&S, was acting as an adjuster for the insurance claims of the Foundry under the NFIP policy. D&S argues that its action against Fidelity is not about trying to enforce the Foundry's NFIP policy and recover under the policy terms, but there is really no other way to understand D&S's claims. The alleged representations made by Colonial that Fidelity would pay for D&S's work on the Foundry were clearly made in the context of adjusting the Foundry's NFIP policy claims and were in reference to Fidelity's role as a WYO insurer of

7

the Foundry. The court is not persuaded that the preemptive effect of the plain language of the SFIP amendment is limited to actions brought by policy-holders only, nor is the court aware of any case law to suggest as much.

D&S argues that it would be unfair, on the one hand, to find that even a third-party contractor's state law causes of action against a WYO carrier are preempted because they arise from the handling of an insurance claim and, on the other hand, to find that the third-party contractor cannot bring a federal contract action against the WYO carrier because it does not have standing to assert rights under the policy. D&S frames this as granting "immunity" to WYO carriers for suits by third-party contractors doing work on behalf of their insureds. (Docket No. 79, p. 9.) To the contrary, however, the court is aware of no legal basis to find it improper to limit liability for WYO carriers to federal causes of action brought by their *insureds*. This is especially true when the statutory scheme itself is a matter of public knowledge, and there is no reasonable basis for a third-party contractor to believe that it has the right to hold its customer's WYO carrier directly liable to it under the customer's policy.

D&S argues that it should be given the opportunity to develop the factual record to prove that Colonial was acting as a more general agent of Fidelity, with the authority to bind Fidelity to obligations to D&S that arose *outside* of the Foundry's NFIP policy. There are simply no allegations in the Amended Complaint, however, to support such a theory of this case. There are no allegations to suggest an agency relationship between Fidelity and Colonial beyond Colonial's role as an adjuster for the Foundry's NFIP policy. Moreover, there is no way to construe as reasonable D&S's reliance on Colonial's representations that Fidelity would pay for work done on the Foundry, outside of Fidelity's role as the Foundry's WYO insurer. Even if, as D&S urges, the court ignores the contradictory allegations in the Amended Complaint indicating

8

that D&S' dealings with Colonial were based on D&S's exercising its presumed rights as an assignee of the Foundry's NFIP policy, there is simply no other basis for understanding the interactions between D&S and Colonial outside of the context of the Foundry's NFIP policy with Fidelity. Accordingly, D&S's argument – that it is a stranger to the policy and so its action against Fidelity should not be subject to the legal framework for actions arising from the handling of a NFIP claim – is disingenuous at best. D&S's Amended Complaint is wholly based on allegations that D&S provided services to a NFIP policy insured, that it communicated with a policy adjuster regarding payment for those services, and that – based on those communications – it now seeks to recover from the WYO insurer.

Finally, D&S argues that, even if actions based on the *handling* of a NFIP insurance claim are limited to *federal breach of contract* actions by the *insured*, actions based on the handling of an insurance claim should be defined to include only actions challenging the final determination on the insurance claim, rather than actions challenging other aspects of the handling process more generally. (Docket No. 79 pp. 14-17.) While there is a split among federal Courts of Appeal, s*ee Remund v. State Farm Fire & Cas. Co.*, 483 F. App'x 403 (10th Cir. 2012), D&S rightly notes that the Sixth Circuit has held that state law actions related to an NFIP policy *may* be brought against WYO carriers where the claim is based on the *procurement* of the policy, rather than the disposition of an insurance claim, *Harris*, 2016 WL 4174381, at *3. D&S's action against Fidelity, however, does not arise from the procurement of a NFIP policy, nor are the circumstances analogous to a procurement case for the reasons discussed below.

D&S argues that its action against Fidelity is akin to other cases where state law claims against a WYO carrier have been permitted, because they were based on the carrier's activities that occurred outside of the determination as to whether the insurance claim would be paid, and

9

that these actions should be treated like procurement-based actions. (Docket No. 79, p. 12.) *See Davis v. Travelers Prop. & Cas. Co.*, 96 F. Supp. 2d 995, 1002 (N.D. Cal. 2000) (claims against a WYO insurer for misrepresentations about how to file a claim were not preempted because they were based on the carrier's own tortious actions rather than FEMA's non-payment of the insurance claim); *Bleeker v. Standard Fire Ins. Co.*, 130 F. Supp. 2d 726 (E.D.N.C. 2000) (same). These cases not only predate the 2000 amendment to the SFIP that preempts claims based on the handling of a NFIP policy claim, but they are district court cases outside of the Sixth Circuit that are not binding on this court. The court is more persuaded by the plain language of the SFIP amendment, which references "*all disputes*" arising from the handling of NFIP insurance claims, and by the Fifth Circuit's holding that "'t]he key factor to determine if an interaction with an insurer is "claims handling" is the status of the insured at the time of the interaction between the parties. If the individual is already covered . . . the interactions between the insurer and the insured are "claims handling" subject to preemption.'" *Spong v. Fidelity Nat. Prop. & Cas. Co.*, 787 F.3d 296, 306 (5th Cir. 2015) (quoting *Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d 397, 401 (5th Cir. 2012)).

Moreover, in *Harris*, the Sixth Circuit distinguished between handling and procurement claims on the basis that procurement-based actions do not implicate liability for FEMA, since they are not related to the policy coverage for which FEMA is financially responsible. 2016 WL 4174381 at *3. Handling-based actions, to the contrary, do appear to implicate FEMA, even when the handling does not directly relate to the final disposition of the insurance claim. This is because, as outlined above, FEMA authorizes WYO carriers to carry out all aspects of the adjustment and defense of these claims, with financial responsibility for *all* of these activities – and not just the final insurance recovery – remaining with the federal government.

10

Finally, even if a claim against a WYO carrier is not preempted where it arises from a WYO carrier's actions that are beyond the bounds of what FEMA has authorized it to do, such that FEMA can disclaim liability – for example, a WYO carrier making representations that expressly contradict the SFIP provisions – D&S's action against Fidelity is not such a case. D&S, by its own admission, never interacted directly with Fidelity. By their very nature, any communications D&S had with Colonial while Colonial was acting in its capacity as an adjuster for Fidelity necessarily took place within the context of Fidelity's FEMA authorized handling of the Foundry's insurance claims. Fidelity acted within its express authority to rely on an adjuster to assist with the investigation of the Foundry's claims and is protected by the express provision of the SFIP that WYO carriers cannot be bound by any representations made by an adjuster regarding the approval of these claims. As a result, the court finds that – for the same reasons discussed above – D&S cannot bring a state law contract or equity claim against Fidelity based on Colonial's representations, because the express terms of the SFIP prohibit any reasonable reliance on those representations.

Accordingly, D&S's action against Fidelity cannot survive. The claims against Fidelity necessarily arise out of Fidelity's handling of the Foundry's NFIP policy claims and, as such, the state law claims are preempted by federal law. Additionally, a federal breach of contract action by D&S cannot survive because D&S is not the insured under the NFIP policy, nor has it been properly assigned that right. Finally, even if the state law claims were not preempted, or D&S were able to proceed under a federal contract action, its claims against Fidelity are still precluded by the fact that D&S could not have reasonably relied on the representations of Colonial that Fidelity would pay for its work, when such reliance is in direct contradiction to the terms of the SFIP.

## **CONCLUSION**

For the foregoing reasons, Fidelity's Motion to Dismiss will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge